UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 08-00192-TLM |
| STEPHAN DORRAL MILLER, ) | |
| CATHERINE LYN MILLER ) | Chapter 13 |
| ) | |
| Debtors. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

**BACKGROUND**

Stephan Miller and Catherine Miller ("Debtors") filed a voluntary joint petition for chapter 7 relief on February 6, 2008, commencing this case.[1] They converted the case to chapter 13 on July 14, 2008.

When Debtors filed their case, they listed the Internal Revenue Service ("IRS") as a holder of a priority unsecured claim of $991.67 for "December 31, 2006 Taxes."  Doc. No. 1 at sch. E.  On May 8, 2008, they amended schedule E to assert that the taxes for this same identified period totaled $40,000.00, of which only $991.67 was entitled to priority, and they listed the entire claim as "disputed." Doc. No. 25.

---

[1] All chapter, section and other statutory citations are to the Bankruptcy Code, Title 11, U.S. Code §§ 101-1532, unless otherwise indicated.

MEMORANDUM OF DECISION - 1

On August 29, 2008, the IRS filed a proof of claim in the total amount of $29,440.48, of which $29,274.73 was asserted as a priority unsecured claim under § 507(a)(8). *See* Claim No. 4 ("Claim"). The priority component of the Claim represented income tax liability for 2004 in the amount of $21,980.10 plus interest of $6,331.59, and income tax liability for 2006 in the amount of $897.77 plus interest of $65.27. The nonpriority amount of the claim was penalty. The 2004 liability was assessed on December 24, 2007, according to the Claim.

On September 15, 2008, Debtors objected to the IRS' Claim. *See* Doc. No. 52. That objection stated:

> Debtors have/or will file an amended 2004 return and disagree with the assessment of tax for that tax year made by the Internal Revenue Service on December 24, 2007.

*Id.* at 1. It made no other assertion and made no other objection.

Following the IRS' response, Debtors amended their objection, *see* Doc. No. 57 ("Amended Objection"), and noticed it for hearing on October 27, 2008.[2] Debtors subsequently obtained an order vacating that hearing on the basis that they were going to file an amended return that the IRS would need to review and evaluate and the parties would need to discuss.

A scheduled confirmation hearing was continued because of the unresolved

---

[2] The amendment corrected an erroneous reference in the initial Objection to Claim "No. 3." The one sentence substance of the Amended Objection was identical to that in the initial objection.

MEMORANDUM OF DECISION - 2

dispute between Debtors and the IRS, but ultimately, confirmation was denied on November 25, 2008.

On April 22, 2009, the chapter 13 trustee moved to dismiss the case under § 1307(c) because there was no activity of record following denial of confirmation and the case was not progressing toward resolution of the IRS dispute or confirmation. Debtors responded with a renewed notice of hearing on their Amended Objection, scheduling the same for June 8. Doc. No. 71. At a May hearing, the Court continued the Trustee's dismissal motion pending resolution of the Amended Objection, and instructed Debtors and the IRS to file briefs prior to the scheduled June 8 hearing. Doc. No. 73.[3]

At the June 8 hearing, the Court concluded there were preliminary legal issues that had to be addressed before taking evidence on Debtors' Amended Objection, and it required further briefing by the parties. *See* Doc. No. 80 (minute entry). Such briefing has now been filed.

**FACTS**[4]

In 2000, a limited liability partnership was formed under the name Miller and Associates, LLP (the "Partnership"). Debtor Stephan Miller and his father,

---

[3] On August 25, the Trustee's motion was again brought on for hearing, but it was determined that the Trustee would await the outcome of this Decision before proceeding with the motion. Doc. No. 88.

[4] Though the Court has not taken evidence, most of the facts referenced herein are not disputed by the parties. In many regards, the facts relate to the contentions that are made, not whether such contentions are accurate or can ultimately be sustained.

MEMORANDUM OF DECISION - 3

William Miller, were 50% partners. William Miller made significant contributions into the Partnership, far larger than those made by his son, Stephan. In 2004, William Miller paid off a principal creditor of the Partnership.

In October, 2007, the IRS completed an audit of Debtors' 2003 and 2004 tax returns. It concluded that the relief from indebtedness received by Stephan Miller as a partner in the Partnership by virtue of his father's payments of Partnership debts effected, after a series of calculations, an increase in Debtors' income and, thus, their income tax liability for that year. The IRS concluded Debtors owed an additional $28,269.10 for 2004.

The results of this audit are reflected on an IRS Form 4549 ("Income Tax Examination Changes"). Ex. 201.[5] On October 31, 2007, both Debtors signed the Form 4549. *Id.* at 2. The additional tax liability of $28,269.10 is reflected on the form, along with interest computed through November, 2007. At the bottom of page 2 of this Form is the following language:

> Consent to Assessment and Collection – I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law. It is understood that this report is subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations.

---

[5] Proposed exhibits, disclosed in pre-hearing filings, *see* Doc. Nos. 75,76, include the Form 4549, and it was discussed at the June 8 hearing.

MEMORANDUM OF DECISION - 4

Ex. 201 at 2.

Notwithstanding this audit and their executed Form 4549, Debtors now dispute the assessment. With the assistance of accountants, Debtors have concluded that certain contributions to the Partnership by William Miller in 2001 and 2002 should be considered or recharacterized as gifts to Stephan Miller, that doing so increases Stephan's basis in the Partnership and, consequently, when the reduction of debt occurred in 2004 by virtue of William Miller's payment of Partnership debt, the income attributed to Debtors should have been less than what the audit established.[6]

Debtors and William Miller and his wife, again assisted by accountants, caused proposed "gift tax" returns for 2001 and 2002 to be prepared.[7] At the time of the June 8 hearing, the gift tax returns had not been "filed" with the IRS, but the parties agreed Debtors and/or William Miller had made the IRS aware of their intention and desire to file them, and the IRS indicated it would not accept them and they would be rejected.

---

[6] There are certain other, less significant, changes that Debtors argue would reduce the assessed 2004 liability. The bulk of the debate and financial impact, however, flows from the suggested characterization of certain 2001-2002 contributions by William Miller to the Partnership as gifts to Stephan Miller.

[7] Debtors initial brief stated that "Debtors, with the aid of . . . a CPA, have prepared gift tax returns for the years 2001 and 2002 for William and Nancy Miller[.]" Doc. No. 78 at 4. In the supplemental brief, however, Debtors argue: "[T]he pro-offered [*sic*] returns, in the form of the gift tax returns, are not those of the Debtors. It is not the Debtors attempting to file a return but rather the parents of Stephan Miller who have pro-offered [*sic*] the same." Doc. No. 87 at 4.

MEMORANDUM OF DECISION - 5

The IRS, in its supplemental brief, asserts that the 2001 and 2002 gift tax returns were signed by William and Nancy Miller on July 16, 2009 and delivered to the IRS on July 27, 2009. Doc. No. 86 at 2. *See also* Doc. No. 87 at 3 (Debtors' supplemental brief, stating "the gift tax returns – which are now filed with the Service"). The IRS further indicates that Debtors filed an amended return for 2004, and that this "Form 1040X" was rejected by the IRS. *Id.* at 1.[8]

## DISCUSSION AND DISPOSITION

### 1. Objection to claim

A proof of claim filed under § 501 is deemed allowed unless a party in interest objects. *See* § 502(a). If an objection to allowance of a claim is made, the Court after notice and a hearing shall determine the amount of and allow the claim except to the extent the objector establishes one of the grounds for disallowance set forth in § 502(b)(1) - (9).[9]

Typically, the burden is on the objector to present evidence sufficient to overcome the *prima facie* validity of a creditor's claim. *See* Fed. R. Bankr. P. 3001(f). *In re Morrow*, 03.2 I.B.C.R. 100, 101, 2003 WL 25273857, at *3 (Bankr. D. Idaho 2003) (citing *In re Pugh*, 157 B.R. 898, 901 (9th Cir. BAP 1993)). A

---

[8] Prior to the supplemental brief acknowledging the senior Millers' gift tax returns had been filed, there was a patent impediment to adjudication before this Court. Debtors' attempt to contest their 2004 tax liability was premised on an act (the senior Millers filing gift tax returns) that had not occurred. This rendered the entire debate speculative and nonjusticiable.

[9] Debtors have never specified which of these grounds supports their Objection.

MEMORANDUM OF DECISION - 6

supplementary rule applies to tax claims. In *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 26 (2000), the United States Supreme Court ruled that "in the absence of modification expressed in the Bankruptcy Code[,] the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it." In *Raleigh,* the state law placed the burden on the Debtor. Here, the Internal Revenue Code, 26 U.S.C. § 7491, states in relevant part that the burden shifts from the tax payer to the IRS when the taxpayer produces "credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B." *See* 26 U.S.C. § 7491(a) (listing several requirements before the burden shifts to the IRS).

   2**. Effectiveness of the 2007 assessment**

Preliminarily, Debtors at the June 8 hearing assailed the effectiveness of the Form 4549 they executed in 2007, because that exhibit or other proof does not show that the Form was "accepted" by one of the IRS employees identified in the Form's language, quoted above.[10] This argument is not persuasive.

Debtors provided no authority for the proposition that the absence of proof of acceptance negates the effectiveness of the Form.[11] Obviously an affirmative

---

[10] This contention was not addressed in Debtors' original or supplemental brief.

[11] It seemed on June 8 that a related argument was advanced regarding lack of signature on the Form by one of the identified IRS representatives who can accept the report. However, the Form does not appear to have a place for such a signature denoting "acceptance," though there is a place for the examiner to sign, which was completed. *See* Ex. 201. Debtors did not suggest
(continued...)

MEMORANDUM OF DECISION - 7

lack of acceptance (*i.e.*, a rejection) by one of the named IRS employees would cancel the effectiveness of the Form and return the IRS and taxpayer to *status quo ante*. There is no suggestion of evidence that such a rejection occurred. Nor has the Court been provided authority to establish that proof of the IRS' affirmative acceptance is a condition precedent to the effectiveness of the Form.

Debtors' arguments regarding the Form's acceptance are not meritorious.

### 3. Amended returns

Can Debtors obtain relief from their agreed assessment of additional 2004 tax liability through the filing in July, 2009, by non-debtors William and Nancy Miller, of 2001 and 2002 gift tax returns? Case law indicates they may not.[12]

In *Badaracco v. Commissioner*, 464 U.S. 386 (1984), the Supreme Court held:

> [T]he Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace.

464 U.S. at 393. The acceptance or rejection of an amended return is "within the discretion of the Commissioner." *Hillsboro Nat'l Bank v. Comm'r*, 460 U.S. 370,

---

[11] (...continued)
they had evidence establishing a lack of IRS "acceptance" but, instead, seemed to suggest the IRS should prove acceptance as a precondition to asserting its claim. They did not support this view with authority.

[12] The authorities discussed below apply with equal vigor to the amended 2004 return allegedly filed by Debtors.

MEMORANDUM OF DECISION - 8

378 n.10 (1983); *see also Jones v. Comm'r*, 338 F.3d 463, 466 (5th Cir. 2003) ("The IRS has the discretion to accept or reject an amended return."). *Dover Corp. & Subsidiaries v. Commissioner*, 148 F.3d 70 (2d Cir. 1998) held:

> There is simply no statutory provision authorizing the filing of amended tax returns, and while the IRS has, as a matter of internal administration, recognized and accepted such returns for limited purposes, their treatment has not been elevated beyond a matter of internal agency discretion.

*Id.* at 72-73 (quoting *Koch v. Alexander*, 561 F.2d 1115, 1117 (4th Cir. 1977) (*per curiam*)). *Fayeghi v. Commissioner*, 211 F.3d 504, 507 (9th Cir. 2000), is consistent, and it also notes "As this Court stated in *Knoefler* [*v. Schneider*], 565 F.2d [1072, 1073 (9th Cir. 1977)], '[t]he filing of an amended return has no effect on the assessment and collection process.'"

One court noted that, where a return has been filed or assessment made, the IRS has the discretion to refuse an amended return, because

> it would be utterly disruptive of the administration of the tax laws if a taxpayer could disregard his return and automatically cha[n]ge an assessment based thereon by making an amended return in his favor long after the expiration of the time for filing the original return.
> . . .
> [The taxpayer] cannot escape . . . the effect of the assessment by his subsequent effort to alter by amendment the return he had filed.

*Miskovsky v. United States*, 414 F.2d 954, 956 (3d Cir. 1969).

*Klinghamer v. Brodrick*, 242 F.2d 563 (10th Cir. 1957), recognized that

> While there is no statute or regulation having the effect of law which vests in a taxpayer the right to file an amended return after

MEMORANDUM OF DECISION - 9

> expiration of the time for the filing of the original return, it has been the general administrative practice over a long period of time to recognize amended returns filed after the due date for the purpose of correcting clear errors or plain mistakes inhering in original returns.

*Id.* at 564. However, the taxpayer there was not correcting an error; he was using an amended return to change a properly claimed business expense deduction to a non-taxable return of capital. The court held that "[a]n amended return designed to accomplish that result could not be filed after the due date of the original return without the consent of the Commissioner, unless refusal to give such consent amounted to an abuse of discretion." *Id.*

Similarly, in *Lion Associates, Inc. v. United States*, 515 F. Supp 550 (E.D. Pa. 1981), Lion and its subsidiaries filed separate returns, not consolidated returns. After audit, they concluded from further research that additional liabilities on the filed returns exceeding $100,000 might have been avoided had consolidated returns been filed and, three years after the audit, Lion attempted to file such returns. It claimed the failure to so file initially "was the result of mistake or inadvertence." *Id.* at 551-52. Relying on *Koch* and *Miskovsky*, quoted above, and related authorities, the court rejected the taxpayer's approach. It concluded:

> The fact that Lion was unaware of the option of consolidated treatment, or was unaware of the benefits to be derived therefrom as a means of avoiding the penalty of the personal holding company tax, is not a basis for allowing it to now amend its returns. The most that can be said is that Lion was a victim of questionable tax advice, and I have no reason to conclude that the IRS abused its discretion in refusing to allow amendment of the returns several years after the time for filing had run.

MEMORANDUM OF DECISION - 10

*Id.* at 553.

These principles have been accepted in bankruptcy court claim litigation. In *In re Vastag*, 345 B.R. 882 (Bankr. N.D. Ill. 2006), the debtors argued – much as Debtors do here – that their objection to the IRS' claim should be sustained because, if a proffered amended return was accepted by the IRS, it would eliminate most or all of the debtors' liability for unpaid taxes and interest from the tax period in question. *Id.* at 884. The court found that "[t]he possibility that the Internal Revenue Service may unilaterally choose to reduce Debtors' assessment . . . is simply not a valid basis to object to the Internal Revenue Service's claim." *Id*. at 885. It also found that the amended return forms filed imposed no legal obligation on the IRS nor entitled debtors to any relief. *Id.* at 885-86. *See also In re Stokes*, 320 B.R. 821, 826-28 (Bankr. D. Md. 2004) (same).

The authorities are uniform. Debtors' attempts to distinguish these cases were ineffective.

### 4. **Setoff or recoupment**

At hearing, Debtors made an alternative legal argument. They suggested they are not asking the Court to require the IRS to accept the senior Millers' gift tax returns or the Debtors' amended 2004 return. Rather, they argued they had a right of "setoff" or "recoupment" against the assessed tax liabilities established by the Form 4549.

MEMORANDUM OF DECISION - 11

Section 553 recognizes and preserves setoff rights that exist under applicable nonbankruptcy law. *See Sims v. United States Dep't of Health & Human Servs. (In re TLC Hosps., Inc.)*, 224 F.3d 1008, 1011 (9th Cir. 2000); *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996); *In re Hipwell*, 97.1 I.B.C.R. 25, 26, 1997 WL 34584333, at *2 (Bankr. D. Idaho 1997). In order to invoke § 553, there must be a "mutual debt" of the debtor and the creditor, both incurred before the commencement of the case. *TLC Hosps., Inc.*, 224 F.3d at 1011. This Court has stated that the mutual debt requirement is satisfied when "parties [] have full and concurrent rights against each other. In other words, mutuality of obligations requires simply that 'something must be owed by both sides.'" *Hipwell*, 97.1 I.B.C.R. at 27 (citation omitted) (quoting *In re Lares*, 95 I.B.C.R. 264, 265-66 (Bankr. D. Idaho 1995)).

Recoupment is an equitable doctrine, similar to setoff, that has been recognized in bankruptcy proceedings. *See TLC Hosps.*, 224 F.3d at 1011; *Newbery*, 95 F.3d at 1399-1404; *Hipwell*, 97.1 I.B.C.R. at 28. Recoupment allows a debtor's claim arising from the "same transaction or occurrence" giving rise to the creditor's claim to be asserted as a reduction of the creditor's claim. *TLC Hosps.*, 224 F.3d at 1011 (citing 5 Collier on Bankruptcy ¶ 553.10, at 553-101 (15th ed. rev.1996)). Unlike setoff, recoupment is not limited to pre-petition claims. *Id.* It does, however, require that the debtor's claim giving rise to a right

MEMORANDUM OF DECISION - 12

of recoupment exists or is legally cognizable.

In the present case, Debtors have no claims "against" the IRS that are cognizable until and unless the IRS were to accept or be forced to accept the William Miller 2001-2002 gift tax returns *and* to "recalculate" Debtors' 2004 liability or accept an "amended" 2004 return from Debtors. Additionally, the effect of the executed Form 4549 in 2007 would appear to waive the very claim Debtors now wish to assert.

The predicates for use of setoff or recoupment have not been established. In short, Debtors have no claim to use under either theory. What they wish to do is to establish, through bankruptcy litigation, a different liability notwithstanding the fact that the 2007 assessment, by their agreement, is final.

### 5. Sections 105 and 505

In their supplemental brief, Debtors cite two other Code provisions not previously raised.

#### a. Section 105

First, Debtors cite to § 105(a), which provides that:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

MEMORANDUM OF DECISION - 13

This section, however, does not provide an independent grant of unlimited equitable authority. *See In re Ruckdaschel*, 364 B.R. 727, 733, 07.1 I.B.C.R. 5, 9 (Bankr. D. Idaho 2007) (citing *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1175 (9th Cir. 2003) and noting that § 105 is not a "roving commission to do equity"). Rather, it enables courts to implement and enforce other provisions of the Bankruptcy Code and Rules. Section 105 is not, standing alone, a sufficient basis for the Court to sustain Debtors' objection, and Debtors' invocation of that section is ineffective.

### b.     Section 505

The other Code provision cited for the first time in Debtors' supplemental brief – and even then with but one case addressed – is § 505(a).[13] It provides:

> [T]he court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

§ 505(a)(1).

Courts have recognized that this grant of authority over tax liabilities "protects a debtor from being bound by a pre-bankruptcy tax liability determination that, because of a lack of financial resources, he or she was unable

---

[13] *See* Doc. No. 87 at 9-10 (citing *Melvin v. IRS (In re Melvin)*, 2009 WL 1034582 (Bankr. M.D. Ala. April 16, 2009)). The Court further notes that the Amended Objection was not brought under § 505 but, instead, "Debtors seek review [of the IRS' proof of claim] under 11 USC § 502(a) and Fed. R. Bankr. P. 3007(a)." *Id.* at 6.

MEMORANDUM OF DECISION - 14

to contest." *Mantz v. Cal. State Bd. of Equalization*, 343 F.3d 1207, 1211 (9th Cir. 2003); *see also Cent. Valley AG Enters. v. United States*, 531 F.3d 750, 755 (9th Cir. 2008). The provision also protects creditors of the estate, preventing the dissipation of estate assets by allowing the estate to contest a debtor's pre-bankruptcy tax liability, established and possibly influenced by a lack of financial resources or indifference on the part of the debtor. *Mantz*, 343 F.3d at 1211.

However, the Code limits the jurisdiction of the Court through § 505(a)(2)(A)[14] which provides:

> The court may not so determine –
>
> (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title.

This provision is sometimes referred to as statutory res judicata. *See Cent. Valley AG*, 531 F.3d at 757. As the Ninth Circuit explained, "Section 505(a)(2)(A) requires that a matter be *actually* contested and adjudicated before it is entitled to preclusive effect in a bankruptcy proceeding." *Id.* at 758. Specifically, the Circuit held that a debtor "must have actually pursued its . . . remedies in Tax Court for

---

[14] This Court's jurisdiction is further limited to the determination of a *debtor's* tax liabilities. As the Ninth Circuit stated in *Central Valley AG*, "§ 505 does not extend bankruptcy jurisdiction to parties other than the debtor, the statute does not permit a bankruptcy court to determine either the tax liabilities of non-debtor partners or the tax consequences for them of the debtor-partnerships' activities." 531 F.3d at 760. Thus the Court has no jurisdiction over the senior Millers' gift tax returns and any liability associated with the same.

MEMORANDUM OF DECISION - 15

preclusion to apply." *Id.* at 767 and at 758 ("A matter is adjudicated when a judgment of a court of competent jurisdiction has been decreed.") (quotation omitted). Thus actual adjudication is required, and a debtor's failure to avail himself of the opportunity for review is not sufficient to deprive the bankruptcy court of the ability to determine the amount of a debtor's tax liability.

Here, Debtors did not bring an action in tax court. Instead, they acquiesced to the IRS' 2007 audit findings of additional 2004 tax liability and signed Form 4549 which expressly waived their right to adjudication. Such a waiver, pursuant to *Central Valley AG*, is not an adjudication under § 505(a)(2)(A) depriving this Court of jurisdiction to determine Debtors' tax liability under § 505(a)(1). Thus, under these facts, the Court may determine Debtors' tax liability. The question becomes whether the Court should.

Section 505(a)(1) provides that the Court "*may* determine the amount or legality of any tax . . .." (emphasis added). The Court's use of this power is discretionary. *See Mantz*, 343 F.3d at 1215 (noting that "§ 505(a)(1) is a permissive empowerment . . . . [i]t is not a mandatory directive"). As in *Mantz*, the Court may "decline to redetermine the [Debtors'] tax liability – indeed, it may do so based on some or all of the reasons underlying the res judicata doctrine – but it is not barred by [statutory] res judicata from considering the [Debtors'] tax liability." *Id.*

MEMORANDUM OF DECISION - 16

Given that Debtors raised § 505(a)(1) only in their supplemental brief and without any significant analysis, the Court does not have an adequate record upon which to determine if it should exercise its discretion. Moreover, the IRS has not had an opportunity to address § 505. Importantly, whether the policies behind § 505(a)(1) will be served by this Court's analysis of Debtors' tax liability has not been addressed by either party. As such, the Court determines Debtors' last minute reference to § 505, without more, cannot support their Amended Objection.

**CONCLUSION**

Upon the foregoing, the Court concludes that the Amended Objection will be overruled. However, the Amended Objection is overruled without prejudice to the commencement and prosecution of a motion under § 505(a). Given the extended delay in this chapter 13 case, and the nature and course of the litigation thus far, the Court concludes it is proper to establish some parameters.

If a motion under § 505(a)(1) is to be brought by Debtors, such a filing shall occur within 14 days of this Decision. If not filed within such period, Trustee's motion to dismiss may be set for hearing on 7 days' notice.

If a § 505(a)(1) motion is filed, Debtors shall obtain a hearing date from this Court's clerk. That hearing date will be approximately 60 days from the date of the filing of the motion. Such hearing will be evidentiary in nature, and

MEMORANDUM OF DECISION - 17

scheduled by the clerk accordingly.  The parties may conduct discovery in preparation for that hearing.  All proposed witnesses and exhibits will be disclosed not later than 7 days prior to hearing, and the parties are advised that the Court may exclude witnesses and documentary evidence not timely disclosed.  Briefs shall also be filed 7 days prior to hearing.

The Court will enter an order accordingly.

DATED:  August 28, 2009

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 18